

United States District Court
Southern District of Texas
FILED

SEP 1 7 2007

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF TEXAS, EX. REL. RICARDO GONZALEZ AND JOSE G. ESPINOZA, EACH INDIVIDUALLY, AND ON BEHALF OF THE UNITED STATES OF AMERICA AND THE STATE OF TEXAS,<br>　　　PLAINTIFFS<br><br>VS.<br><br>DR. CARLOS D. MEGO, DR. PEDRO MEGO, DR. SUBBARAO YARRA, DR. YAMIL W. AUDE, ALL INDIVIDUALLY AND D/B/A VALLEY HEART CONSULTANTS, P.A., AND VALLEY HEART CONSULTANTS, P.A.<br>　　　DEFENDANTS | § § § § § § § § § § § § § § § § § § § | **UNSEALED**<br><br>M-07- 241<br>CIVIL ACTION NO. _____<br><br><br>JURY DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW The United States of America ("USA"), The State of Texas ("Texas") ex. rel. Ricardo Gonzalez ("Gonzalez"), and Jose G. Espinoza ("Espinoza") Plaintiffs in the above styled and numbered cause, and file this, their Original Complaint and complain of Dr. Carlos D. Mego, Dr. Pedro Mego, Dr. Subbarao Yarra, Dr. Yamil W. Aude, all Individually and d/b/a Valley Heart Consultants, P.A., and Valley Heart Consultants, P.A. (collectively "Defendants"), and for such cause of action would respectfully show the court as follows:

## I.     Parties

1.1   Plaintiff Ricardo Gonzalez, the Relator, is an individual that resides and works in McAllen, Hidalgo County, Texas. His business address is 500 S. Bicentennial, McAllen, Hidalgo County, Texas. Gonzalez is a radiology director who was formerly employed by Defendants. As required under the False Claims Act, 31 U.S.C. § 3729 and 3730 et. seq., and Texas Human Resources Code § 36.102, a copy of this complaint and a written disclosure of all material evidence the Relator possessed at the time the Original Complaint was filed has been provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas and to the Attorney General of the State of Texas. Gonzalez has direct and independent knowledge of the facts underlying this complaint, and the facts and allegations underlying this complaint have not been publicly disclosed, as public disclosure is defined under 31 U.S.C. § 3730. Gonzalez is an "original source" as that term is defined under 31 U.S.C. § 3730(e).

1.2   Plaintiff Jose G. Espinoza, the Relator, is an individual that resides in Edinburg, Hidalgo County, Texas and works in McAllen, Hidalgo County, Texas. His business address is 1200 E. Savannah, Ste. 7, McAllen, Hidalgo County, Texas. Espinoza is employed with Defendants as a medical assistant. As required under the False Claims Act, 31 U.S.C. § 3729 and 3730 et. seq., and Texas Human Resources Code § 36.102, a copy of this complaint and a written disclosure of all material evidence the Relator possessed at the time the Original Complaint was filed has been provided to the Attorney General of the United States and to the United States Attorney for the

Southern District of Texas and to the Attorney General of the State of Texas. Espinoza has direct and independent knowledge of the facts underlying this complaint, and the facts and allegations underlying this complaint have not been publicly disclosed, as public disclosure is defined under 31 U.S.C. § 3730. Espinoza is an "original source" as that term is defined under 31 U.S.C. § 3730(e).

1.3     The Defendants are all residents of or are located in Hidalgo County, Texas.

1.4     Dr. Carlos D. Mego is an individual who resides in Hidalgo County, Texas. He may be served with citation by personally serving him at his place of business: 1200 E. Savannah, Ste. 7, McAllen, Texas 78503 or at such other place as he may be found.

1.5     Dr. Pedro Mego is an individual who resides in Hidalgo County, Texas. He may be served with citation by personally serving him at his place of business: 1200 E. Savannah, Ste. 7, McAllen, Texas 78503 or at such other place as he may be found.

1.6     Dr. Subbarao Yarra is an individual who resides in Hidalgo County, Texas. He may be served with citation by personally serving him at his place of business: 1200 E. Savannah, Ste. 7, McAllen, Texas 78503 or at such other place as he may be found.

1.7     Dr. Yamil W. Aude is an individual who resides in Hidalgo County, Texas. He may be served with citation by personally serving him at his place of business: 1200 E. Savannah, Ste. 7, McAllen, Texas 78503 or at such other place as he may be found.

1.8     Valley Heart Consultants, P.A. is a professional association with its principal place of business in McAllen, Hidalgo County, Texas. Valley Heart Consultants, P.A. may be served with citation by personal service on its registered agent or any officer, including Carlos D. Mego, at the following address: 1200 E.

Savannah, Ste. 7, McAllen, Texas 78503, or at any location at which they may be found.

1.9 This complaint is filed *in camera*, under seal, and may not be served upon any of the Defendants until further order of this court.

## II. Jurisdiction and Venue

2.1 This court has jurisdiction pursuant to 31 U.S.C. §§ 3730(b) and 3732, which provide that any action under section 3730 may be brought in any judicial district in which the Defendant(s) reside or transact business or in which any act proscribed by 31 U.S.C. § 3729 occurred. The Defendants in this case reside in this judicial district and the acts giving rise to their liability occurred in this district, as explained in more detail below.

2.2 Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because the Defendants reside and are subject to personal jurisdiction in this district.

## III. Facts

3.1 **Unqualified personnel.** Defendants are conducting cardiolyte stress tests to approximately 19 patients per day. These tests are used to visualize cardiac activity when a patient is at rest or exercising. The test should be performed by a nuclear medicine technologist under the direct supervision of a cardiologist.

3.2 The stress test is a two-part test. The first part involves injecting an isotope and monitoring the patient's symptoms, heart rate, blood pressure and electrocardiogram (EKG). During the test, persantine or adenosine and cardiolyte are

given to the patient directly through an intravenous line. The persantine or adenosine is administered over a four minute period. The persantine is given to expand the coronary arteries. The nuclear medicine technologist then administers cardiolyte and then he or she takes images of the heart while the patient is at rest. The second part involves stressing the heart either by injecting the patient with persantine or adenosine with a second dose of cardiolyte or through treadmill exercise. A camera that is able to detect cardiolyte is placed close to the patient's chest. This camera takes images of the cardiolyte as it is carried to the heart through the coronary arteries. By studying these pictures the doctor is able to see which areas of the heart may not be receiving a sufficient supply of blood and oxygen.

3.3  The cardiolyte stress tests are supposed to be supervised and monitored by a cardiologist and performed by a nuclear medicine technologist because of the nature of the radioactive medicines that are injected into the patients during the first and second part of the procedure, however, as the facts below will demonstrate, a cardiologist does not usually supervise the test if said test is performed on a Friday as the individual Defendants do not usually work on Fridays. Although Defendant Valley Heart Consultants, P.A. has a nuclear medicine technologist on staff, it has employed a medical assistant who is unqualified to inject the patients with cardiolyte, which is a type of radioisotope, to perform the stress tests.

3.4  The Texas Department of Health Bureau of Radiation Control Regulation Guide describes the type of information the Texas Department of Health considers when evaluating a license application for the limited use of radioactive material such as cardiolyte and other radioactive isotopes. Section III. (D) of the Guide states that the

individuals handling diagnostic radiopharmaceuticals must be certified as a general certificate medical radiologic technologist (MRT) under Texas Civil Statutes, Article 4512m, at a bare minimum. Additionally, the MRT must undergo the proper training in nuclear medicine before he or she can perform cardiolyte stress tests. Based upon the facts before this Court, the medical assistant who is employed to handle the nuclear medicine is not an MRT, but rather simply a medical assistant.

    3.5    Gonzalez was previously employed by Defendant Valley Heart Consultants, P.A. During his employment with Valley Heart Consultants, P.A., Gonzalez discovered that the Defendants were engaging in behavior that violates Chapter 143 of the Texas Administrative Code. Specifically, the Code classifies nuclear medicine studies as "dangerous or hazardous" which should not be performed by a medical assistant. *25 Tex. Admin. Code §143.16.* Gonzalez left his employment with Defendants because Gonzalez was ordered to perform medical acts that were outside his scope. As a result, Gonzalez felt an ethical duty to reject Defendants' orders and decided to leave his employment with Defendants.

    Gonzalez further learned that a medical assistant, who was not a nuclear medicine technologist, was injecting the patients with radioisotope, which is a violation of the Code. *Id.* While a physician can delegate the administration and provision of dangerous drugs, the physician must delegate such duties to a person who is qualified and properly trained under the *Medical Practice Act, see 3 Occupations Code § 157.002 (2007, Regular Session). See also 3 Occupations Code § 563.051 (2007, Regular Session).* However, as the facts of this case show, the Defendants were delegating the administration and provision of dangerous drugs to a medical assistant who is not

qualified nor properly trained to inject the cardiolyte injections associated with the cardiolyte stress tests.

3.6 Furthermore, Gonzalez learned that a cardiologist was not directly supervising the cardiolyte stress tests. Although a physician is allowed to delegate a medical act, the delegation must be made to a qualified and properly trained person under the *Medical Practice Act, see 3 Occupations Code § 157.001 (2007, Regular Session)*. It was also common knowledge among Gonzalez, Espinoza, and other employees at Valley Heart Consultants, P.A. that a cardiologist was not in the building when cardiolyte stress tests were performed on Fridays, which is a violation of this act because the physicians are delegating to a person who is unqualified and has not been properly trained to perform this type of medical procedure.

Additionally, Gonzalez has direct and personal knowledge that Defendants are engaging in the behavior complained of in paragraphs 3.3 - 3.6 because Gonzalez, prior to his employment with Defendants, had a cardiolyte stress test performed by a person who Plaintiffs know to be a medical assistant and not a nuclear medicine technologist. At the time that Gonzalez underwent the cardiolyte stress test, Gonzalez was under the impression that the person who performed the stress test was qualified and trained to inject the radioactive isotope. But as the facts have shown, the person who performed the cardiolyte stress test was neither qualified nor trained to handle such radioactive pharmaceuticals as he was simply a medical assistant.

3.7 Espinoza is currently employed by Defendant Valley Heart Consultants, P.A. as a medical assistant. Through his employment with Valley Heart Consultants, P.A., Espinoza has personal knowledge that Defendants have engaged in the same

behavior complained of in paragraphs 3.3 – 3.6 above before, during and after Gonzalez's employment with defendants. Espinoza further states that Defendants continue to engage in the same behavior to date.

3.8 **Medicare and/or Medicaid Fraud.** The Defendants provide medical services to individuals that are eligible for reimbursement for such services by Medicare and/or Medicaid. In order to be paid for such services, Defendants are required to submit applications for payment to agencies that are responsible for processing Medicare and/or Medicaid claims. There is information and belief that the majority of the patients who undergo the cardiolyte stress tests at Valley Heart Consultants, P.A. are eligible and do in fact receive Medicare and/or Medicaid benefits.

3.9 Gonzalez discovered that the Defendants, in order to acquire funds from Medicaid and Medicare, were engaging in fraudulent activity by submitting claims that they knew were false because the services made the basis of the claims submitted for reimbursement were not performed by a qualified and properly trained person. Additionally, under the Medicare physician fees, a cardiovascular stress test must be conducted under the direct supervision of a physician. The facts of this case show that the Defendants were delegating this medical procedure to a medical assistant who would inject the patients with the cardiolyte nuclear medicine, and on some occasions, while a cardiologist was not in the building at all, which is a clear violation of the Medicare guidelines. Upon learning of the fraudulent activity, Gonzalez began to conduct his own investigation of the fraudulent activity. In his investigation, Gonzalez has become aware of thousands upon thousands of false and fraudulent claims submitted by the Defendants.

3.10 Espinoza has personal knowledge that Defendants have engaged in the same behavior complained of in paragraph 3.9 above before, during and after Gonzalez's employment with defendants. Espinoza further states that Defendants continue to engage in the same behavior to this date. Furthermore, there are simply too many fraudulent claims for Gonzalez and Espinoza to list in this complaint. However, by way of example, Gonzalez and Espinoza identify the following fraudulent claims:

3.10.1 Patient MG. MG went to Valley Heart Consultants on June 28, 2007 for a cardiolyte stress test. The stress test was performed by Moises Bravo, a medical assistant who is not a nuclear medicine technologist. Defendant Valley Heart Consultants, P.A. submitted a claim for payment and identified a cardiolyte tech as the person who performed the stress test, which is a false claim because Moises Bravo is not a nuclear medicine technologist.

3.10.2 Patient CZ. CZ went to Valley Heart Consultants on June 28, 2007 for a cardiolyte stress test. The stress test was performed by Moises Bravo, a medical assistant who is not a nuclear medicine technologist. Defendant Valley Heart Consultants, P.A. submitted a claim for payment and identified a cardiolyte tech as the person who performed the stress test, which is a false claim because Moises Bravo is not a nuclear medicine technologist.

3.10.3 Patient GG. GG went to Valley Heart Consultants on June 28, 2007 for a cardiolyte stress test. The stress test was performed by Moises Bravo, a medical assistant who is not a nuclear medicine technologist. Defendant Valley Heart Consultants, P.A. submitted a claim for payment and identified a cardiolyte tech as the

person who performed the stress test, which is a false claim because Moises Bravo is not a nuclear medicine technologist.

3.10.4 Patient MA. MA went to Valley Heart Consultants on November 17, 2006 for a cardiolyte stress test. The stress test was performed by Moises Bravo, a medical assistant who is not a nuclear medicine technologist. The physician was listed as Pedro Mego, M.D. but it is common knowledge among the employees of Valley Heart Consultants, P.A. that a cardiologist is usually not in the building when the stress tests are being performed on Fridays as required by law. Defendant Valley Heart Consultants, P.A. submitted a claim for payment and identified Dr. Mego as the cardiologist who supervised the stress test, which is, in all likelihood, a false claim.

3.10.5 Patient OP. OP went to Valley Heart Consultants on June 29, 2007 for a cardiolyte stress test. The stress test was performed by Moises Bravo, a medical assistant who is not a nuclear medicine technologist. Defendant Valley Heart Consultants, P.A. submitted a claim for payment and identified a cardiolyte tech as the person who performed the stress test, which is a false claim because Moises Bravo is not a nuclear medicine technologist. Additionally, it is common knowledge among the employees of Valley Heart Consultants, P.A. that a cardiologist is usually not in the building when the stress tests are being performed on Fridays as required by law.

3.11 On information and belief, there are thousands of additional claims of the same fraudulent nature as those described in paragraphs 3.10.1 through 3.10.5.

3.12 In all of the examples listed above and at all times material to the claims made in this complaint, the Defendants knew that the claims they were submitting were false or, alternatively, were grossly negligent in not knowing the claims were false

because a person who was unqualified in nuclear medicine was performing cardiolyte stress tests which necessarily involves the injection of nuclear medicine.

3.13 As a result of Defendants' false claims, the United States and/or Texas reimbursed or paid the Defendants for services that should have been supervised and performed by a cardiologist in conjunction with a nuclear medicine technologist, but in fact those services were performed and supervised by a medical assistant, and not a cardiologist and nuclear medicine technologist, respectively.

3.14 The United States and Texas have been damaged as a result of the Defendants' submission of false claims and false statements in support of such claims. The exact amount of damages is indeterminable at this time, but on information and belief are in the millions of dollars.

## IV. Causes of Action

4.1 Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1). The Relators repeat the allegations of paragraphs 1.1 - 3.14 and incorporate them by reference as if fully set forth herein. Upon information and belief, Defendants presented, or caused to be filed, false claims for payment of medical services with knowledge of their falsity, or with gross negligence or reckless disregard to facts and conditions that would indicate that said claims were inaccurate or inappropriate and false and caused payments for said claims to be made by the United States Government. By reason of the violation of the False Claims Act, 31 U.S.C. §3729(a)(1), the Defendants have knowingly or recklessly damaged the United States Government in an as yet undetermined amount.

4.2 Violation of the False Claims Act, 31 U.S.C. § 3729(a)(2). The Relators repeat the allegations of paragraphs 1.1 - 3.14 and incorporate them by reference as if

fully set forth herein. Upon information and belief, Defendants presented, or caused to be filed, false statements or records in support of false claims for payment for medical services with knowledge of their falsity, or with gross negligence or reckless disregard to facts and conditions that would indicate that said statements or records were inaccurate or inappropriate and false and caused payments for said claims to be made by the United States Government. By reason of the violation of the False Claims Act, 31 U.S.C. § 3729(a)(2), the Defendants have knowingly or recklessly damaged the United States Government in an as yet undetermined amount.

4.3   Violation of the False Claims Act, 31 U.S.C. § 3729(a)(3). The Relators repeat the allegations of paragraphs 1.1 - 3.14 and incorporate them by reference as if fully set forth herein. The Defendants, in performing the acts described above, conspired to defraud the United States Government in violation of the False Claims Act, 31 U.S.C. § 3729(a)(3) by getting false or fraudulent claims allowed or paid to the damage of the United States Government.

4.4   Violation of Ch. 36, Texas Human Resources Code. Defendants submitted false claims to the State of Texas under the Medicaid program in violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.002 et seq. The Relators repeat the allegations of paragraphs 1.1 – 3.14 and incorporate them by reference as if fully set forth herein. Upon information and belief, Defendants presented, or caused to be filed, false statements or records in support of false claims for payment for medical services with knowledge of their falsity, or with gross negligence or reckless disregard to facts and conditions that would indicate that said

statements or records were inaccurate or inappropriate and false and caused payments for said claims to be made by the State of Texas or the United States Government.

4.5 Violation of 25 Tx Admin. Code § 143.16. The Relators repeat the allegations of paragraphs 1.1 – 3.14 and incorporate them by reference as if fully set forth herein. The Defendants have and continue to this day to violate 25 Texas Admin. Code § 143.16 each and every singular time they delegate the duty of performing nuclear medicine studies such as the cardiolyte stress tests to a medical assistant who is wholly unqualified and not properly trained.

4.6 Violation of the Medical Practice Act, 3 Tx Occ Code § 157.001. The Relators repeat the allegations of paragraphs 1.1 – 3.14 and incorporate them by reference as if fully set forth herein. The Defendants have and continue to this day to violate the Medical Practice Act, 3 Tx Occ Code § 157.001 each and every singular time they delegate the duty of performing nuclear medicine studies such as the cardiolyte stress tests to a medical assistant who is wholly unqualified and not properly trained.

4.7 Violation of the Medical Practice Act, 3 Tx Occ Code § 157.002. The Relators repeat the allegations of paragraphs 1.1 – 3.14 and incorporate them by reference as if fully set forth herein. The Defendants have and continue to this day to violate the Medical Practice Act, 3 Tx Occ Code § 157.002 each and every singular time they engage in the delegation of administration and provision of dangerous drugs by allowing a medical assistant to engage in the administration and provision of cardiolyte nuclear medicine to the patients.

4.8 Violation of 3 Tx Occ Code § 563.051. The Relators repeat the allegations of paragraphs 1.1 – 3.14 and incorporates them by reference as if fully set

forth herein. The Defendants have and continue to this day to violate 3 Tx Occ Code § 563.051 each and every singular time they engage in the delegation of administration and provision of dangerous drugs by allowing a medical assistant to engage in the administration and provision of cardiolyte nuclear medicine to the patients.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Gonzalez, Espinoza the United States of America, and the State of Texas demand a trial by jury and, after final trial, that judgment be rendered against the Defendants, jointly and severally, as follows:

(A) for damages that are as yet indeterminable, for violations of the False Claims Act, 31 U.S.C. §§ 3729(a)(1), (2), and (3), and Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.002

(B) for treble the damages found for violations of 31 U.S.C. §§ 3729(a)(1), (2), and (3);

(C) for a fine of not less than $5,000.00 nor more than $10,000.00 per violation;

(D) for violations of 25 Tx Admin. Code §143.16;

(E) for violations of the Medical Practice Act, 3 Tx Occ Code §§ 157.001, .002;

(F) for violations of 3 Tx Occ Code § 563.051;

(G) for reasonable attorneys' fees and costs; and

(H) for such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

Respectfully submitted,

**LAW OFFICE OF
CYNTHIA CONTRERAS GUTIERREZ**

*[signature]*

CYNTHIA CONTRERAS GUTIERREZ
Texas Bar No. 08640550
5518 S. Jackson Rd.
Edinburg, Texas  78539
Phone:  (956) 683-0057
Fax:     (956) 683-0059

**Attorney for Plaintiffs Ricardo Gonzalez and
Jose G. Espinoza**